Ara Sahelian, Esq., [CBN 169257]
SAHELIAN LAW OFFICES
23276 South Pointe Drive, Suite 216
Laguna Hills, CA  92653
949. 859. 9200
e-mail: sahelianlaw@me.com
Attorneys for MMWH Group LLC and Wasim Hamad

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### (Eastern Division - Riverside)

James Shayler

                    Plaintiff,

          vs.

MMWH Group LLC; Wasim

Hamad

                    Defendants.

CASE NO.: 2:20-cv-10051-MWF-PVC

The Honorable Michael W. Fitzgerald

**POINTS AND AUTHORITIES TO
MOTION TO DISMISS**

Hearing Date: 6/7/21
Time: 10:00 AM

## I. INTRODUCTION

## II. BACKGROUND

Compliance with Local Rule 7-3 .................................. pg. 5

## III. DISCUSSION

a. Failure to State a Claim Pursuant to Rule 12(b)(6) .... pg. 8
b. The Complaint Is Also Jurisdictionally Defective and Subject to Dismissal under Federal Rule of Civil Procedure 12  .... pg. 14
c. Shayler Has Not Alleged Facts Demonstrating the Likelihood of Future Injury ................................................................. pg. 21

## IV. CONCLUSION

_____

## TABLE OF AUTHORITIES

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
631 F.3d 939, 953 (9th Cir. 2011) (en banc).
……………………………………………… pg. 7, 14, 15, 20
*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)
……………………………………………………… pg. 9, 13
*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)
……………………………………………………… pg. 9, 15
*Levitt v. Yelp! Inc.,*
765 F.3d 1123, 1135 (9th Cir. 2014)
……………………………………………………………… pg. 9
*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
519 F.3d 1025, 1031 (9th Cir. 2008).
……………………………………………………………… pg. 9
*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990, 996 (9th Cir. 2014).
……………………………………………………………… pg. 9
*Starr v. Baca,*
652 F.3d 1202, 1216 (9th Cir. 2011).
…………………………………………………………… pg. 10, 13

*Whitaker v. Tesla Motors, Inc.,*
985 F.3d 1173, 1177.
………………………………………………………………… pg. 13

*Whitaker v. Pan. Joes Inv'rs LLC,*
2021 U.S. App. LEXIS 1985 (9th Cir. 2020)
………………………………………………………………… pg. 13

*Whitaker v. Body, Art & Soul Tattoos L.A., LLC,*
2021 U.S. App. LEXIS 1991 (9th Cir. 2020)
………………………………………………………………… pg. 13

*Spokeo, Inc. v. Robins,*
136 S.Ct. 1540, 1547 (2016).
………………………………………………………………… pg. 14, 20

*Fortyune v. Am. Multi-Cinema, Inc.,*
364 F.3d 1075, 1081 (9th Cir. 2004).
………………………………………………………………… pg. 14

*Safer Chemicals, Healthy Families v. U.S. Envtl. Prot. Agency,*
943 F.3d 397, 411 (9th Cir. 2019)
………………………………………………………………… pg. 15

*O'Campo v. Bed Bath & Beyond of Cal., LLC,*
610 Fed. Appx. 706, 708.
………………………………………………………………… pg. 16

*Molski v. Kahn Winery,*
405 F. Supp.2d 1160, 1163 (C.D. Cal. 2005)
………………………………………………………………… pg. 20

_____

42 U.S.C. § 12188(b)
………………………………………………………………… pg. 7

Fed. R. Civ. P. 8(a)(2).
………………………………………………………………… pg. 8

Fed. R. Civ. P. 12 (b)(6).
………………………………………………………………… pg. 8

**TABLE OF CONTENTS AND AUTHORITIES**

**POINTS AND AUTHORITIES TO
MOTION TO DISMISS [FRCP 12(b)1]**

## I. INTRODUCTION

This Motion is being made on behalf of MMWH Group LLC and Wasim Hamad  (hereinafter also "Defendants"). Plaintiff, James Shayler (hereinafter also "Shayler"), filed the instant action against Defendants, in relation to a property located at 600 N Poplar Ave., Montebello, CA 90640 (hereinafter also, "Property"), asserting claims for "the Americans with Disabilities Act; the Unruh Civil Rights Act ."

## II. BACKGROUND

Shayler filed his initial complaint on November 2, 2020. On November 25, 2020 the Court issued an order declining to exercise supplemental jurisdiction. As a result, the sole remaining cause of action is under the Americans with Disabilities Act. Defendants filed a notice of intent to file a motion to dismiss on December 4, 2020, and offered to confer with Plaintiff. (See Exhibit K-1). The Parties conferred on December 8, 2020, and Defendants pointed out the defects in the complaint. Instead of conferring in good faith, Shayler filed a request for the entry of a clerk's default. Defendants filed a motion to set aside the default, which was granted on

February 2, 2021.

Shayler waited for the Defense to file its motion to dismiss, which Defendants did on February 16, 2021, to file their first amended complaint on February 26, 2021. Defendants then requested a second conference, advising Plaintiff that the complaint continued to be defective (see Exhibit K-2). Plaintiff asked for additional time to file a second amended complaint (SAC) (see Exhibit K-3).

Having reviewed the SAC, which was filed on April 5, 2021 - and having surveyed every square inch of the Property - Defendants once again requested a conference, advising Plaintiff that the SAC showed little improvement (see Exhibit K-4). And once again the parties conferred, this time on Monday April 19, 2021, and stipulated  in writing that Defendants would file their motion to dismiss <u>after</u> the required pause mandated under Local Rule 7-3. True to form, Plaintiff filed a request for the entry of a clerk's default (Dkt. 39), which Defendants immediately opposed. The below "barriers," which were alleged by Shayler, were deleted from the initial complaint.

- The Absence of a Marked Path of travel

- Improper Sidewalk Minimum Width

- Abrupt Changes in Level for Sidewalk

- Abrupt Changes in Level from Reserved Parking Space

- The Absence of an Adjacent Access Aisle

- Improper Surface Signage

- The Absence of Accessible Exterior Route

- The Absence of Directional Signage

- The Absence of an Exterior Route of Travel

The SAC is a pared down version of the initial complaint.

Therefore, having tortuously satisfied their obligations under Local Rule 7-3, Defendants now file the within motion to dismiss the SAC.

As to the SAC, Plaintiff provides a laundry list of purported violations of the Americans with Disabilities Act Accessibility Guidelines (the Guidelines) that allegedly exist at the parking lot serving Balcom's Market (hereinafter "the Business"). A van accessible parking space, with an access aisle, is positioned nearest to the entrance of the Business. (see **Exhibit A**). The striping is faded but clearly visible. There is a "no parking" sign on a post, and an international sign of accessibility painted on the asphalt. The

**POINTS AND AUTHORITIES TO MOTION TO DISMISS - Page 4 -**

1  ground is flat. Yes the asphalt is worn, and there is cracking visible due to

2  its age. But Shayler's multiple allegations that the worn asphalt denies him

3  full and equal access to the Business is preposterous. In order to put to bed

4  Shayler's wild assertions about cracks and craters, Defendants surveyed

5  every square inch of the relevant areas of the parking lot, breaking it down

6  to a checkerboard pattern. A photograph was taken of each square. **Exhibits**

7  **B-A through B-X** show the squares. While worn, the surface of the

8  accessible parking space, and the adjoining access aisle, are in good

9  working condition. It is unimaginable that any disabled patron could claim

10 that he or she was denied access because of its condition.

    Exhibit A illustrates Shayler's trajectory, from the parking lot to the

entrance of the Business, which he traversed using a cane. Aside from the

baseless allegations relating to the asphalt, the complaint is replete with

hyperbole and misstatements of fact. None of Shayler's allegations is

credible or plausible.

    **Compliance with Local Rule 7-3:** Pursuant to L.R. 7-3 Defense

Counsel contacted opposing counsel and thoroughly discussed the substance

of the contemplated motion and potential resolution. The conference took

place at least seven (7) days prior to the filing of the within motion.

(Declaration of counsel).

## III. DISCUSSION

There are 279 pages to The 2010 ADA Standards for Accessible Design (the Guidelines) published by the Department of Justice, and 170 pages to the Guidance on the 2010 ADA Standards for Accessible Design. A single deviation, however minor, from any provision found in their pages, provides the pretext for one of a handful of plaintiff's firms, filing these cases on an industrial scale, to cash-in.

To be clear, a violation of the Guidelines, alone, does not make a lawsuit. To maintain a lawsuit, a plaintiff must plead harm that is concrete (not abstract), and particularized. Shayler pleads no such harm. The complaint before us is replete with vague, boilerplate, conclusory allegations, insufficient to provide notice of the alleged violation, and insufficient to assert Article III standing. Even a "tester" plaintiff may not sue a business for injunctive relief simply because an ADA violation exists. In other words, the ADA is not a private attorney general statute.

Shayler, here, cannot vindicate the rights of disabled persons generally.

The Attorney General is "the proper entity to bring such an action." 42 U.S.

C. § 12188(b) ("Enforcement by Attorney General"). While a plaintiff may

obtain an injunction against impending discrimination, this "does not

transform the ADA into an open-ended private attorney general statute,

because the scope of such an injunction is limited." *Chapman v. Pier 1

Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011) (en banc). Shayler is

therefore not relieved from the constitutionally imposed burden of

demonstrating an injury-in-fact and a sufficient likelihood of repeated harm.

Shayler must show at each stage of the proceedings either that he is deterred

from returning to the facility or that he intends to return to the facility and is

therefore likely to suffer repeated injury. He lacks standing if he is

indifferent to returning to the Property or if his alleged intent to return is not

genuine, or if the alleged barriers do not pose a real and immediate threat.

*Chapman,* 631 F.3d 939, 953.

The SAC is essentially a cut and paste job, no different than the dozens

of similar complaints Shayler has filed in the Central District, by way of his

attorneys (Hakimi /Shahriari). (See Exhibit O, Case No. 2:20-cv-00235-

ODW-KS). A recent such complaint was discredited and dismissed by the

2094

Hon. Otis D. Wright (Case No. 2:20-cv-00235-ODW-KS).

On his third attempt at a worthy complaint, Shayler alleges he visited the Property on December 16, 2019, August 17, 2020, and September 14, 2020, respectively, and that he was deterred from shopping at the Business because of the condition of the accessible parking space - and his knowledge of the entrance door being too difficult to open. It is worth noting that the initial complaint was entirely silent as to the entrance door. The entrance door remains open during business hours (see declaration of Wasim Hamad). Defendants will demonstrate that the allegations regarding the condition of the Business do not plausibly suggest an entitlement to relief, that Shayler has suffered no harm, and that he is not deterred from revising the Business.

**a. Failure to State a Claim Pursuant to Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). See Fed. R. Civ. P. 12 (b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme

Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.

Ed. 2d 868 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544,

127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a plaintiff's "factual allegations

[in the complaint] 'must . . . <u>suggest that the claim has at least a plausible</u>

<u>chance of success.</u>'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014)

(emphasis added). The court "accept[s] factual allegations in the complaint

as true and construe[s] the pleadings in the light most favorable to the

nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not

simply recite the elements of a cause of action [and] must contain sufficient

allegations of underlying facts to give fair notice and to enable the opposing

party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic*

*Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir.

2014)). "A claim has facial plausibility when the Plaintiff pleads factual

content that allows the court to draw the reasonable inference that the

Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The

plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id*.

(quoting *Twombly*, 550 U.S. at 556).

The SAC fails because it is primarily based on legal conclusions. A complaint must contain sufficient allegations of underlying facts to give fair notice and enable the opposing party to defend itself effectively, and it must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The SAC does not allege such facts.

Shayler contends that he has difficulty walking and standing; that he has only partial use of his leg, and suffers from heart failure. He  uses a cane.

**Shayler alleges that the access aisle of the accessible parking space does not adjoin an accessible route. [§502.3]**. SAC ¶ 20, p. 6. The path Shayler took is demonstrated in **Exhibit A**. The access aisle adjoins the path to the entrance of the Business. On each of the three occasions he alleges he visited the Business, he parked his car as ordinary patrons would, facing the wall, exited his car, walked around the back of it, and retrieved his cane from the passenger side. SAC ¶ 19. Shayler's allegation is false as the access aisle adjoining the accessible parking space is clearly present. See **Exhibits**

A and C.

Shayler alleges that the paint is faded in the disabled parking space and access aisle. [§502.2]. SAC ¶ 20, p. 8. Shayler argues that "When the paint for the designated disabled parking space and access aisle is worn and aged, there is a greater chance/risk that non-disabled patrons will park in the designated disabled parking space." SAC ¶ 20, p. 8. In essence, Shayler speculates that the faded paint invites trespassers to park in the access aisle. Aside from being speculative, Shayler's allegation of harm is implausible, as it is impossible to fit a vehicle in the access aisle.

Shayler alleges that the "NO PARKING" ground surface sign is missing. [§ 502.3.3]. SAC ¶ 20, p. 13. See Exhibit H. Shayler speculates that the absence of NO PARKING lettering invites trespassers. There is ample signage throughout the accessible parking space and the access aisle to put anyone on noticed that it is an accessible parking space.

Shayler alleges that the ISA sign is missing at the front entrance. [§ 216.6]. See Exhibit J. SAC ¶ 20, p. 14. There is a single entrance to Balcom's Market. Such a sign could be useful if the Business had multiple entrances. There is only a single entrance. Shayler's allegation of harm, as a result of a missing accessibility sign pasted on the glass door, is implausible.

**Shayler alleges that the tow-away sign was missing. [§§ 11B-502.8, 11B-502.8.2].** SAC ¶ 20, p. 15. Shayler was able to make three visits. He was able to park on each of those three occasions. Shayler's allegation of harm because of a missing tow-away sign is highly speculative and implausible. Moreover, the District Court is not empowered to enforce state regulations.

**Shayler alleges that the disabled parking space sign was non-compliant. [§ 502.6].** See **Exhibit I**. Yes there is graffiti on the sign. But, the "no parking" lettering is clearly visible despite the graffiti. Once again, Shayler's allegation of harm is speculative and implausible.

**Shayler alleges that there are improper hatch lines in the access aisle. [§502.2.3].** The hatch lines are indeed visible. See **Exhibit C**. Shayler's allegation that he is harmed by the existing hatch lines is preposterous.

**Shayler alleges improper force to open the front door. [§404.2.9].** SAC ¶ 20, p. 18; **and that the door closes at an improper speed. [§ 404.2.8.1].** SAC ¶ 20, p. 19. The door to Balcom's Market, visible in **Exhibit J**, is kept open at all times. (see declaration of Wasim Hamad). The

force required to open the door is at or near the requirements of the Guidelines (not exceeding 5 lbs.). The force must be measured from the open end of the door as opposed to the center. The reading provided by Shayler is deceptive.

It is not sufficient for a pleading to "simply recite the elements of a cause of action." *Starr,* 652 F.3d at 1216.  Complaints must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id. Whitaker v. Tesla Motors, Inc.,* 985 F.3d 1173, 1177.

*Tesla* is part of a trilogy of decisions by the Ninth circuit putting an end to the vague allegations in complaints filed by frequent filers such as Shayler. *Whitaker v. Pan. Joes Inv'rs LLC*, 2021 U.S. App. LEXIS 1985 (9th Cir. 2020) In *Whitaker v. Body, Art & Soul Tattoos L.A., LLC*, 2021 U.S. App. LEXIS 1991 (9th Cir. 2020) (Defendant BAS was represented by the undersigned on appeal), *Whitaker v. Tesla Motor Corp.,* 2021 U.S. App. LEXIS 1953 (9th Cir. 2021). All three cases provide that the stringent pleading standard established by *Iqbal/Twombly* apply to disability access plaintiff's allegations, and whether they state a claim for relief. Under

*Iqbal/Twombly*, to state a claim for relief, Shayler will need to allege "well pleaded facts, not legal conclusions." He does not.

**b. The Complaint Is Also Jurisdictionally Defective and Subject to Dismissal under Federal Rule of Civil Procedure 12(b)(1)**

"[A] disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation." *Chapman,* 631 F.3d 939, 946. To establish standing, a plaintiff must allege that he or she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016). "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Id*. In the context of Americans with Disabilities Act ("ADA") actions, where a private litigant is only entitled to injunctive relief, the plaintiff "must additionally demonstrate a sufficient likelihood that he will again be wronged in a similar way. That is, the plaintiff must establish a real and immediate threat of repeated injury." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004).

At this writing we are left in the dark as to how Shayler was denied full and equal access. Bare allegations are insufficient to establish "a particularized injury that affect[s] the plaintiff in a personal and individual way." *Safer Chemicals, Healthy Families v. U.S. Envtl. Prot. Agency*, 943 F.3d 397, 411 (9th Cir. 2019) (internal quotation marks omitted).

> [w]hile [the court is] mindful of the generous pleading standards that apply to civil rights plaintiffs, a liberal interpretation of a . . . civil rights complaint may not supply essential elements of the claim that were not initially pled. . . . Although [plaintiff] alleges that he is physically disabled, and that he . . . [personally] encountered architectural barriers that denied him full and equal access, he never alleges what those barriers were and how his disability was affected by them so as to deny him the full and equal access that would satisfy the injury-in-fact requirement (i.e., that he personally suffered discrimination under the ADA on account of his disability).

*Chapman*, 631 F.3d at 954. Shayler concludes that he was denied full and equal access, but fails to allege any facts which, if true, would demonstrate this legal conclusion. Shayler's "formulaic recitation" of the elements of an ADA claim "fails to sufficiently allege the essential elements of Article III standing." *Chapman*, 631 F.3d at 954.

**Shayler alleges that the surface of the route from the parking stall to the business entrance is uneven. [§§ 206 and 303].** SAC ¶ 20, p. 7. For a

1   start, sections 206 and 303 are provisions designed for wheelchair users, and

2   not those who walk. Uneven surfaces and abrupt changes in height, even if

3   they were to exist, and they do not, do not affect those who are not

4   wheelchair bound. (See **Exhibit M**, a useful guide published by the Access

5   Board, found at the following URL: https://www.access-board.

6   gov/ada/guides/chapter-3-floor-and-ground-surfaces/). To simply allege that

7   there are violations of section 206 and 303 is utterly meaningless. There are

8   dozens of subsections to section 206 and 303. Shayler refers to none.

9   Simply put, the provisions found in sections 206 and 303 do not apply to

10   those who are able to walk upright, with the use of crutches or canes.

11      Plaintiff uses a cane, and not a wheelchair. It is not reasonable to apply

12   regulations that were promulgated for wheelchair-users in situations where

13   the plaintiff uses a cane. "The district court properly concluded that the

14   barriers O'Campo alleged would not interfere with the full and equal access

15   of a mobility-impaired person who requires the use of a cane, rather than a

16   wheelchair." *O'Campo v. Bed Bath & Beyond of Cal., LLC*, 610 Fed. Appx.

17   706, 708.

18      Shayler alleges there are quarter-inch changes in level (SAC, p. 7, line

19

20

21

22

23

24

25

26

27

28

2094

26), but does not indicate where, cracked and broken asphalt that create one-half inch verticals (SAC, p. 8, lines 2-4), but does not indicate where, that the path of travel contains "patched, repaired, and leveled" concrete (SAC, p. 8, line 6), but does not indicate where. Shayler claims that these "excess changes in level pose risk" (SAC, p.8, line 9). Shayler's allegation of harm is speculative and not plausible. **Exhibits B-A through B-X** show every inch of the relevant portions of the path of travel. The path of travel, in its present condition, cannot possibly deny Shayler access, or cause him difficulty. Shayler's allegations that he may "trip and/or fall," that "such uneven surfaces caused … difficulty and pain," or might caused him to "lose his balance," without identifying the precise location of the alleged imperfections in the asphalt, is pure speculation and hyperbole.

**Shayler alleges that the width of the parking space is improper. [§502.2].** The SAC ¶ 20, p. 9, alleges that there was insufficient  space for Shayler to exit his vehicle. The combined width of the access aisle and the parking space exceeds 17 ft. See **Exhibit C**. Shayler has more than ample room "to park" and "safely disembark from the driver's side of his vehicle." In fact, there is enough room for Shayler - and his family - "to park" and

"safely disembark." This is yet another preposterous allegation. Shayler parked facing the wall, walked from the driver's side, behind his car to the passenger side to retrieve his cane. He had ample room. He would have had ample room to retrieve a sofa from his car.

**Shayler alleges that the lengths of the parking space [§ 502.2],** (SAC ¶ 20, p. 10), **and access aisle [§ 502.3.2],** (SAC ¶ 20, p. 11), **were "improper."**  See **Exhibits E and G**. Shayler once again misstates facts. The length of the accessible parking space and the adjoining access aisle Measure 18 feet ± what would be allowable for construction tolerances. But let us assume, for the sake of argument, that the accessible parking space were an inch shorter or longer. Shayler cannot explain how that stands to impact his ability to shop at the Business. Shayler was not harmed, and is not deterred from revisiting. The length of the accessible parking space will not deny him full and equal access.

**Shayler alleges that the parking space and access aisle have improper cross-slopes, claiming a violation of § 502.4 of the 2010 Guidelines.** SAC ¶ 20, p. 11. Shayler does not identify specifically where the cross-slope exceeds 2%, and in addition misstates the facts. See **Exhibit E**. The cross-slope along his path of travel measures less than the 2%

---

2094

allowable under the code. Shayler has not been harmed, and he is not deterred from revisiting.

**Shayler alleges that the access aisle was the improper width claiming a violation of § 502.3.1 of the 2010 Guidelines.** In the SAC ¶ 20, p. 13, Shayler alleges the access aisle is 5 ft.Shayler is simply wrong. The access aisle measures 6'10" at its narrowest, and 11'6" feet six inches at its widest. See **Exhibit H**. Shayler had ample room to walk around the car and to remove his cane from the passenger side. He has not been harmed, and he is not deterred from revisiting.

**Shayler alleges that the ground within the designated disabled parking space has a large, open crack and is uneven. [§ 502.4].** See **Exhibits B-E, B-F, and B-L**. These exhibits show that Shayler's path of travel is completely flat, and free of any cracks or crevices. The crack to which Shayler refers is under where his car would be parked. Shayler has not been harmed, and he is not deterred from revisiting.

**Finally, Shayler alleges that the floor mat is unsecured. [§ 302.2].** SAC ¶ 20, p. 20. Section 302.2 applies to wheelchairs only. Shayler's allegation that the floor mat might buckle and that he might trip is purely

speculative. See **Exhibit J.** Shayler has not been harmed, and he is not deterred from revisiting.

The *Chapman* court recognized that "once a disabled plaintiff has encountered a barrier violating the ADA, that plaintiff will have a personal stake in the outcome of the controversy so long as his or her suit is limited to barriers related to that person's *particular disability*." *Chapman*, 631 F.3d at 947.  A plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, 136 S.Ct. at 1550.

**c. Shayler Has Not Alleged Facts Demonstrating the Likelihood of Future Injury**

Even if Shayler sufficiently alleged that he personally encountered an architectural barrier, he fails to establish a likelihood of future injury. "In evaluating whether an ADA plaintiff has established a likelihood of future injury, courts have looked to: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) plaintiff's frequency of travel near defendant." *Molski v. Kahn Winery*, 405 F.

Supp.2d 1160, 1163 (C.D. Cal. 2005); *Chapman*, 631 F.3d at 949-50.

Shayler alleges that he stops by the Business after his visits to his

physician's office (located nearby), to buy soda and chips. SAC ¶ 13.

What is missing from the allegations, though, is whether he has plans

to continue treatment by the physician. Shayler is entirely silent as to

where he lives, and does not aver the travel time from his residence to

the Business.

## IV. CONCLUSION

For all the foregoing reasons Shayler's complaint must be dismissed. In

the alternative, Defendants urge the Court to order that Shayler and

Defendants visit the Property, along with  CASp inspectors representing

each, to identify all access barriers <u>related</u> to Shayler's specific disability.

Defendants urge that the Court order that this be accomplished before the

parties waste time on unnecessary discovery. The parties should then file a

joint report, and attempt to settle the matter.

\\

\\

1
2
3      Respectfully submitted:
4      Date: 4/29/2021
5
6                                            SAHELIAN LAW OFFICES
7
8
9                                            Ara Sahelian, Esq.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2094