Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Valerie Bradbury (SBN 249868)
valerie@handslawgroup.com
Lauren Davis (SBN 294115)
lauren@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**JAMES SHAYLER**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SHAYLER, an individual,<br><br>            Plaintiff,<br><br>      v.<br><br>MMWH GROUP LLC, a California limited liability company; WASIM HAMAD, an individual; and DOES 1-10,<br><br>            Defendants. | Case No. 2:20-cv-10051-MWF-PVC<br><br>Hon. Michael W. Fitzgerald<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       June 27, 2022<br>Time:       10:00 a.m.<br>Courtroom:  5A |

# **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ....................................................6

II.  RELEVANT FACTS...............................................................8

III. LEGAL STANDARD FOR SUMMARY JUDGMENT .........................11

IV.  PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA

     CLAIM FOR VIOLATIONS RE: LACK OF ACCESSIBLE PARKING,

     ROUTE(S), AND ACCESS TO THE BUSINESS INTERIOR ..............12

     A.   Plaintiff is Disabled..................................................14

     B.   Defendants Own/Operate a Place of Public Accommodation ........15

     C.   The Property Has Barriers That Can Be Readily Removed...........15

          1.   Lack of Accessible Route(s). .................................17

               a. Due to Abrupt Changes in Level......................17

          2.   Lack of Accessible Parking Space and Access Aisle ..........18

          3.   Lack of Accessible Business Interior.....................20

     D.   Plaintiff Encountered Violations, and Is Deterred from

          Returning .......................................................21

     E.   Remediation of the Barriers Is Readily Achievable......................23

V.   REMEDIES ....................................................................24

VI.  CONCLUSION................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

3
**CASES**

4
*Anderson v. Liberty Lobby, Inc.,*
5
     477 U.S. 242 (1986)..................................................................................11

6
*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,*
7
     603 F.3d 666 (9th Cir. 2010) ....................................................................13

8
*Celotex Corp. v. Catrett,*
9
     477 U.S. 317 (1986)..................................................................................11

10
*Chapman v. Pier 1 Imports (U.S.) Inc.,*
11
     631 F.3d 939 (9th Cir. 2011) ............................................................13, 16

12
*Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust,*
13
     867 F.3d 1093 (9th Cir. 2017) ..................................................................22

14
*Doran v. 7-Eleven, Inc.,*
15
     524 F3d 1034 (9th Cir. 2008) ......................................................17, 21, 22

16
*Fortyune v. American Multi-Cinema, Inc.,*
17
     364 F.3d 1075 (9th Cir. 2004) ..................................................................25

18
*Lopez v. Catalina Channel Express, Inc.,*
19
     974 F.3d 1030 (9th Cir. 2020) ..................................................................23

20
*Lujan v. Defenders of Wildlife,*
21
     504 U.S. 555 (1992)..................................................................................21

22
*Moeller v. Taco Bell Corp.,*
23
     816 F. Supp. 2d 831 (N.D. Cal. 2011)................................................13, 23

24
*Molski v. M.J. Cable, Inc.,*
25
     481 F.3d 724 (9th Cir. 2007) ....................................................................13

26
*Rush v. Denco Enterprises, Inc.,*
27
     857 F. Supp. 2d 969 (C.D. Cal. 2012)......................................................16
28

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

**STATUTES, RULES, AND REGULATIONS**

<u>ADA Standards for Accessible Design (ADAS)</u>

1991 ADAS § 4.1.2(1) ...........................................................................17

1991 ADAS § 4.3.2(1) ...........................................................................17

1991 ADAS § 4.5.1..........................................................................17, 18

1991 ADAS § 4.5.2..................................................................................18

1991 ADAS § 4.5.3..................................................................................20

1991 ADAS § 4.6.3..........................................................................17, 19

<u>California Civil Code (C.C.C.)</u>

C.C.C. § 51............................................................................................10

<u>Federal Rules of Civil Procedure (FRCP)</u>

FRCP 56................................................................................................11

<u>United States Code (U.S.C.)</u>

42 U.S.C. § 12181 ..................................................................................6

42 U.S.C. § 12182(a) .......................................................................12, 14

42 U.S.C. § 12182(b)(2)(A)(iv) .......................................................13, 14

42 U.S.C. § 12183(a)(2).....................................................................13, 14

42 U.S.C. § 12188(a) .......................................................................14, 24

42 U.S.C. § 12188(a)(1)..........................................................................21

42 U.S.C. § 12188(a)(2) ......................................................................................24

## I.   PRELIMINARY STATEMENT

This matter involves a disabled senior citizen's multiple attempts to visit a grocery/liquor store named Balcom's Market (the "business"), located at 600 N. Poplar Ave, Montebello, CA 90640 (the "Property"), which is not accessible to people with disabilities.

Plaintiff James Shayler ("Plaintiff") is an elderly man suffering from spinal issues, severe leg pain, and sciatica, which prohibit him from standing for longer than fifteen (15) minutes. He also has diminished use of his arm and hand. On three (3) separate occasions, he had difficulty visiting the Property simply because Defendants MMWH Group LLC and Wasim Hamad ("Defendants") refuse to perform the routine remediations necessary to make the Property accessible under the Americans with Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12181, *et seq.*).

Plaintiff moves for summary judgment because there is no dispute that, as an individual with disabilities, he faced/faces barriers to access at Defendants' Property. There are clear violations at the Property with respect to parking, routes of travel, and access to the business interior. Many of these violations can be remediated with minimal time, expense, and no impact on the business.

Plaintiff had great difficulty disembarking from the car and walking to and entering the business given the hazards at the Property. As a disabled person who has trouble walking, and who needs and uses a cane or walker, Plaintiff would not

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

be able to safely disembark from the car and walk into the business given the excess slopes and changes in level in the parking lot and the route connecting the designated disabled parking space (and/or access aisle) to the business entrance. Also, Plaintiff is not able to unload his mobility device(s) and safely disembark from his vehicle when the designated disabled parking space and adjacent access aisle are not clearly marked.  When the boundaries of the designated disabled space and the adjacent access aisle are inadequately marked, it is difficult for Plaintiff to determine where to park, and non-disabled persons are not adequately deterred from parking in the designated disabled parking space and/or adjacent access aisle. It is difficult for Plaintiff to access the business if he is required to use a parking space other than the designated disabled space. Further, Plaintiff had difficulty accessing the interior of the business as there was no blue sign with the International Symbol of Accessibility (ISA) posted identifying the accessible entrance. Where there are multiple possible entrances and no ISA sign it can cause Plaintiff to have to backtrack and/or search for the accessible entrance which is problematic for him given his difficulties walking and standing.

Plaintiff is also aware of the conditions subsequently identified by his Certified Access Specialist (CASp) and by his investigator, conditions which would also jeopardize his ability to safely access the Property. Although he wishes to return to the Property to patronize Balcom's Market, which is conveniently

located near his medical provider, he reasonably feels that he cannot safely do so until the violations are remediated. Thus, Plaintiff seeks an order requiring Defendants to remediate existing violations, including by: providing an asphalt overlay at the designated disabled parking space and adjacent access aisle to level the designated parking area; patching, repairing and leveling the asphalt and concrete on the route between the designated parking and the business entrance; re-striping the designated disabled parking space and adjacent access aisle; providing an ISA sign identifying the accessible entrance of the business; and securing/removing the mats inside and outside of the building.

## II.   RELEVANT FACTS

Plaintiff is a disabled individual with severe leg and arm issues. UF 1. Plaintiff has multiple levels of diffuse disc bulges in his spine and a pinched nerve in his spine. UF 2. Plaintiff has sciatica, which causes him to experience pain in his lower spine and right leg. UF 3. Plaintiff has difficulty walking and standing for longer than fifteen (15) minutes; and, sometimes, the pain is so severe, he cannot be mobile (i.e., cannot walk around) at all. UF 4. Plaintiff uses a cane daily to help him walk, and when his pain is especially bad, he uses a walker. UF 5. He also has limited use of one hand/arm following an injury on the job and subsequent surgery. UF 6. Because Plaintiff has severely impaired mobility, and relies on a walker or cane, he needs ADA compliant routes of travel, parking, signage, and business

interiors for full and equal access to public accommodations. UF 7. The State of California has issued him a permanent disabled person parking placard. UF 8.

Defendants own the property located at 600 N. Poplar Ave, Montebello, CA 90640, which houses a grocery/liquor store named Balcom's Market which is open to the public. UFs 9-10. On December 16, 2019, August 17, 2020, and September 14, 2020, Plaintiff visited the Property with the intent to patronize the business, but he experienced difficulty, humiliation, and/or frustration upon encountering various barriers. UF 11. When Plaintiff visited the Property, the route of travel was not smooth, and there were abrupt changes in the level in the route connecting the designated disabled parking space (and/or access aisle) to the business entrance, which put him at risk of tripping with his cane or walker. UF 12.  The striping and markings for the designated disabled space and the adjacent access aisle needed repair and/or maintenance making it difficult for Plaintiff to identify the designated disabled space and being able to use it so he could unload his mobility device. UF 13. Without adequate marking/striping there was no effective deterrent for others who are not disabled from parking in the space and/or access aisle.   UF 13. Plaintiff had difficulty disembarking from his vehicle and unloading his mobility device because the designated disabled parking space and adjacent access aisle had slopes exceeding two percent (2%). UF 14.  When Plaintiff visited the Property there was no blue sign with the ISA posted the front entrance of the business

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

identifying the accessible entrance, which put him at risk of having to backtrack and/or search for the accessible entrance which is problematic for him given his difficulties walking and standing. UF 15.

Plaintiff filed his Complaint on November 2, 2020, alleging violations of the ADA and the UCRA (Unruh Civil Rights Act ("UCRA") (Cal. Civ. Code § 51, *et seq.*)). UF 16. On February 19, 2021, Plaintiff's Certified Access Specialist (CASp) conducted an accessibility inspection of the parking area, route(s) of travel and business interior at the Property. UF 17.  He confirmed that many of the above-referenced barriers still exist and also that many of the remediations are not costly, would not take much time to fix. UFs 18- 26. He also observed that none of the remediations would have any impact on business operations, nor the economic activity of the business after they have been corrected. UFs 27-28.

After identifying additional barriers, and to comply with the Court Order dated July 2, 2021, Plaintiff filed a Third Amended Complaint ("TAC") on July 15, 2021, alleging violations of the 1991 ADA standards. UF 29. On March 9, 2022, Plaintiff's investigator visited the Property and photographed the conditions thereon. UF 30. He confirmed that many of the above barriers still exist. UF 31-38.

Plaintiff is aware of the additional barriers to access observed by his CASp and his investigator. UF 39. Thus, although he would like to return to the Property, he is deterred from doing so, as he does not feel it is safe for him to visit

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

unless/until the violations are remediated. UF 41. The Property is conveniently located near his medical provider, and he plans and intends to visit again once the existing barriers to access are removed. UF 42.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56. To prevail on summary judgment, a moving party need not disprove the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). A disputed fact is "material" where the resolution of that fact "might affect the outcome of the suit under the governing law," and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 250-252 (mere existence of a scintilla of evidence in support of the non-movant's position will be insufficient; there must be evidence on which a jury could find by a preponderance of the evidence that the non-movant is entitled to a verdict).

**IV.   PLAINTIFF HAS ESTABLISHED THE ELEMENTS OF HIS ADA CLAIM FOR VIOLATIONS RE: LACK OF ACCESSIBLE PARKING, ROUTE(S), AND ACCESS TO THE BUSINESS INTERIOR**

Under Title III of the Americans with Disabilities Act of 1990 ("ADA"), the general rule is that "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

The ADA applies not just to intentional discrimination, but also to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to obviously exclusionary conduct – such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's

entrance. Rather, the ADA proscribes more subtle forms of

discrimination – such as difficult-to navigate restrooms and

hard-to-open doors – that interfere with disabled individuals'

"full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-945 (9th Cir. 2011)

(internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is

disabled within the meaning of the ADA; (2) the defendant is a private entity that

owns, leases, or operates a place of public accommodation; and (3) the plaintiff

was denied public accommodations by the defendant because of his disability."

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc*., 603 F.3d 666,

670 (9th Cir. 2010), *citing Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir.

2007). "The third element – whether plaintiffs were denied public accommodations

on the basis of disability – is met if there was a violation of applicable accessibility

standards." *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011),

*citing Chapman*, 631 F.3d at 945. This is because discrimination is defined both as

either a failure to ensure that alterations are "readily accessible to and useable by

persons with disabilities," and, where there are no alterations, "a failure to remove

architectural barriers … in existing facilities … where such removal is readily

achievable." 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv).

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

Accordingly, the elements of a discrimination claim under the ADA are:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a).

2. Defendants' facility must be a place of "public accommodation," and, therefore, governed by Title III of the ADA. *Id.*

3. Defendants must be responsible parties, i.e., owners, operators, lessors, or lessees. *Id.*

4. Defendants' facility must have either undergone an alteration that did not comply with the accessibility standards or contain an easily removable barrier that the defendant failed to remove. 42 U.S.C. §§ 12183(a)(2), 12182(b)(2)(A)(iv).

5. Plaintiff must have actually encountered an unlawful barrier or have reasonable grounds for believing that he is about to be subjected to discrimination as he would encounter such a barrier. 42 U.S.C. § 12188(a).

As discussed below, Plaintiff's civil rights were violated because Defendants failed to provide accessible parking, route(s) of travel, and access to the building interior. Plaintiff discusses each element of his claim below.

## A.     Plaintiff is Disabled

Plaintiff has multiple levels of diffuse disc bulges in his spine, a pinched nerve, and sciatica, which cause him to experience pain in his spine and right leg.

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

UFs 2-3. He has difficulty walking and standing for longer than fifteen (15) minutes; sometimes, the pain is so severe that he cannot be mobile (i.e., cannot walk around) at all. UF 4. Plaintiff uses a cane daily to assist with walking, given his leg issues. UF 5. When the pain is especially bad, Plaintiff uses a walker. *Id.*

Plaintiff also has very limited use of one arm and hand as a result of an injury on the job as a firefighter years ago and the subsequent surgery. UF 6. One hand has atrophied, and he cannot put much pressure on his one arm/hand. *Id.*

As a result of his permanent disabilities, the State of California issued Plaintiff a permanent disabled person parking placard. UF 8.

Further, following extensive and protracted motion practice and having considered Plaintiff's response to the order to show cause, this Honorable Court, on November 18, 2021, ruled "Plaintiff's response to the OSC demonstrates that Plaintiff is a disabled person and thus protected under the ADA." UF 1. Plaintiff is clearly disabled and entitled to the protections of the ADA.

**B.      Defendants Own/Operate a Place of Public Accommodation**

Defendants have admitted, during their discovery responses, that they own the Property and business, which is open to the public. UFs 9-10. There is no dispute as to this element.

**C.      The Property Has Barriers That Can Be Readily Removed**

There can be no genuine dispute that several barriers at the Property remain

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

and can easily be removed.

"To determine if Plaintiff describes an 'architectural barrier' the Court must turn to the ADA Accessibility Guidelines for Buildings and Facilities ('ADAAG'). If an element does not meet or exceed ADAAG standards, it is considered a barrier to access." *Rush v. Denco Enterprises, Inc.*, 857 F. Supp. 2d 969, 973 (C.D. Cal. 2012) (internal cites omitted). "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). These are "objective" and "precise" standards, and "the difference between compliance and noncompliance" is "often a matter of inches." *Id.*

The Ninth Circuit has opined that a plaintiff may recover under the ADA for barriers personally encountered, as well as those subsequently uncovered during discovery, so long as the barriers are relevant to the person's disability. *Doran v. 7-ELEVEN, Inc.*, 524 F.3d 1034, 1043-1044 (9th Cir. 2008). The Ninth Circuit held:

> … he or she may conduct discovery to determine what, if any,
> other barriers affecting his or her disability existed at the time
> he or she brought the claim. This list of barriers would then in
> total constitute the factual underpinnings of a single legal

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

inquiry, namely, the failure to remove architectural barriers in

violation of the ADA ….

*Doran*, 524 F.3d at 1043-1044. Following an inspection, Plaintiff filed his TAC,

incorporating the additional barriers discovered. UF 29. Plaintiff now seeks

summary judgment in his favor, given that clear barriers to access exist in violation

of the ADA, and there has not been (cannot be) any (credible) assertion or showing

that the barriers cannot be readily removed.

### 1.     Lack of Accessible Route(s)

Section 4.3.2 (1) of the 1991 ADA Standards for Accessible Design

provides: "There shall be at least one "accessible route from … the accessible

parking … to the accessible building entrance they serve."" 1991 ADAS §

4.3.2(1); *See also* 1991 ADAS § 4.1.2(1).   "Parking access aisles shall be part of

an accessible route to the building or facility entrance…". 1991 ADAS § 4.6.3.

Here, there was/is no accessible pedestrian route(s) leading from the parking

area/ access aisle to the front entrance of the business, according to the findings of

both Plaintiff's CASp and investigator. UF 21, UF 33.

### a.     Due to Abrupt Changes in Level

There is no accessible route connecting the designated disabled parking

space/access aisle to the business entrance; rather, the route has uneven surfaces

with abrupt vertical changes in level. Section 4.5.1 of the 1991 ADA Standards for

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

Accessible Design provides: "Ground and floor surfaces along accessible routes… shall be stable, firm, slip-resistant…". 1991 ADAS § 4.5.1.  "Changes in level between 1/4 in and 1/2 in (6 mm and 13 mm) shall be beveled with a slope… Changes in level greater than 1/2 in (13 mm) shall be accomplished by means of a ramp." 1991 ADAS § 4.5.2.

The Site Accessibility Evaluation conducted by Plaintiff's CASp on February 19, 2021, and subsequent photographs taken by Plaintiff's investigator during his inspection of the Property on March 9, 2022, reveal that the route from the designated disabled parking space to the grocery/liquor store entrance has damaged and uneven ground with abrupt vertical edges greater than one-fourth inch (1/4"). UF 21, 33. Plaintiff encountered these conditions, which put him at increased risk of tripping with his cane or walker. UF 12. Plaintiff respectfully requests that this Court grant summary judgment as to the route of travel violations. *See* Section IV.C.1.a., *supra*.

### 2.      Lack of Accessible Parking Space and Access Aisle

The designated parking space and the adjacent access aisle are not clearly marked/painted. The paint is dilapidated and in need of repair and/or maintenance. Plaintiff needs to park in the designated disabled parking space, and it is difficult for him to determine where to park when the designated disabled parking space is not clearly marked. UF 13.  Also, other people who are not disabled tend to park in

the designated disabled parking space and/or access aisle, which lack adequate marking. It is exceedingly difficult for Plaintiff to disembark from the car when he has to use a non-disabled parking space (without an adjacent access aisle), instead of a designated disabled parking space (with an adjacent access aisle). *Id; see* 1991 ADAS § 4.6.3.

The designated disabled parking space and access aisle at the Property have slopes in excess of 2%. Section 4.6.3 of the 1991 ADA Standards for Accessible Design provides: "Parking spaces and access aisles shall be level with surface slopes not exceeding 1:50 (2%) in all directions." 1991 ADAS § 4.6.3. Plaintiff's CASp identified slopes as high as 6.5% in the adjacent access aisle. UF 20. Further, Plaintiff's investigator identified slopes in both the designated disabled parking space and access aisle exceeding 2%. UFs 35-37. Plaintiff encountered slopes in both the designated disabled parking space and the access aisle. UF 14. He had trouble disembarking from the vehicle and unloading his mobility device on a sloped surface and had difficulty traversing on sloped surfaces. UF 14.

The designated disabled parking space is required to be level. 1991 ADAS § 4.6.3. Here there were large open cracks that contain abrupt edges and surface irregularities over a one-fourth inch (1/4") found within the designated disabled parking space by both Plaintiff's CASp and Plaintiff's investigator. UFs 19, 32. Plaintiff has challenges maneuvering with his mobility device(s) on such damaged

pavement, because he could trip and/or fall if his cane, walker, and/or feet catch on the ground. Further, traversing on such uneven surfaces causes Plaintiff additional pain as he suffers from neuropathy which affects the bottom of his feet. UF 40.

Accordingly, Plaintiff respectfully requests that the Court grant him summary judgment with respect to the various violations in the parking lot.

### 3.      Lack of Accessible Business Interior

The area in and around the business is not compliant due to unsecured mats and inadequate signage at the front entrance.

Carpets or mats shall be "securely attached." 1991 ADAS § 4.5.3. Photographs taken by both Plaintiff's CASp and investigator demonstrate that mats inside and outside of the business are not secured. UFs 23, 34. The unsecured mats can easily buckle and roll. *Id.* Plaintiff is at risk of tripping on these unsecured mats with his cane or walker. UF 40.

Accessible entrances shall "be identified by the International Symbol of Accessibility…". 1991 ADAS § 4.1.2 (7). Photographs taken by both Plaintiff's CASp and investigator demonstrate that there is no ISA sign at the front entrance to the business. UFs 22, 38. Plaintiff encountered inadequate signage at the front entrance of the Property, making it difficult for him to identify the accessible entrance. UF15. Further, Defendants admitted, in their discovery responses, that

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

there is no ISA sign at the front entrance of the business, and that there was no ISA sign at the front entrance of the business in 2019 and 2020. UF 44.

Thus, Plaintiff respectfully requests that the Court grant summary judgment with respect to the various violations at the Property.

### D.     Plaintiff Encountered Violations, and Is Deterred from Returning

A plaintiff is entitled to injunctive relief under the ADA if he "is being subjected to discrimination on the basis of disability," or "has reasonable grounds for believing [he] is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). Thus, a plaintiff has standing to seek injunctive relief based on barriers personally encountered, or those he reasonably believe he will encounter.

Generally, a plaintiff must meet three requirements in order to establish standing: (1) the plaintiff must have "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there must be a "causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

In the context of civil rights statutes, such as the ADA, courts are instructed to take a "broad view" of constitutional standing. *Doran*, 524 F.3d at 1039-40. With regard to ADA discrimination claims, the Ninth Circuit recognizes a

deterrent effect doctrine. In connection with the requirement that the injury be actual or imminent, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'" *Doran*, 524 F.3d at 1040. In other words, injury is imminent when a plaintiff "is threatened with harm in the future because of existing or immediately threatened non-compliance with the ADA." *Id.*

The Ninth Circuit further clarified that a plaintiff need not personally encounter a barrier to demonstrate injury supporting standing. Instead, "[i]t is the plaintiff's 'actual knowledge' of a barrier, rather than the source of that knowledge, that is determinative." *Civil Rights Educ. & Enforcement Ctr. v. Hosp. Properties Trust*, 867 F.3d 1093, 1099 (9th Cir. 2017). Indeed, "[o]nce a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of[,] or otherwise interfere with his access to[,] a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts." *Doran*, 524 F.3d at 1042, n.5. In other words, once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers related to the plaintiff's disability removed, regardless of whether the plaintiff personally encountered them. *Id.* at 1039-1040.

Plaintiff encountered barriers which caused him difficulty, humiliation, and/or frustration. UF 11. Plaintiff is aware of the additional barriers observed by

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

Plaintiff's CASp and his investigator. UF 39. He hopes intends/plans to return once the barriers are removed, as the Property is near his medical provider. UF 42.

### E.   Remediation of the Barriers is Readily Achievable

Barrier removal is "readily achievable" when it is "easily accomplishable and able to be carried out without much difficulty or expense." *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 847 (N.D. Cal. 2011). The Ninth Circuit recently established a framework for assessing whether barrier removal is readily achievable, based on several factors: A) nature and cost of action; B) overall financial resources of the facility, number of persons employed, effect on expenses and resources, or impact upon operation of the facility; C) overall financial resources of covered entity; and D) type of operation of the covered entity. *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020). Under this framework, acknowledging plaintiffs may not have information on all factors, the Ninth Circuit stated, "plaintiffs are not required to address in detail each of the four factors to meet their initial burden of plausibly explaining why it is readily achievable to remove an architectural barrier." *Id*.

In this case, the remediation of the identified barriers is not costly, time-consuming, or damaging to the operation of the business. UFs 24-28. None of the remediations would impact the operation of the business nor would they impact the economic activity of the business after they have been corrected. UF 27-28.

The estimated cost to re-stripe the designated disabled parking space and adjacent access aisle, to provide an asphalt overlay at the designated parking space and access aisle to level the designated parking area, and to patch, repair and level the asphalt and concrete on the route between the designated parking space and the business entrance is $3,500. It should take three days to complete. UF 24.

It would cost an estimated $250 to provide the ISA sign at the front entrance and it should take one hour to complete. UF 25.

Removing or securing the floor mat is estimated at $0-25 and it should take fifteen (15) minutes to complete. UF 26.

Plaintiff submits that the minimal costs, time involved to complete remediation, and lack of impact on the business operation provide a plausible explanation for why barrier removal would be readily achievable.

## V.    REMEDIES

There are no genuine disputes of material fact remaining. Plaintiff is entitled to injunctive relief under the ADA. Plaintiff seeks injunctive relief pursuant to 42 U.S.C. § 12188(a). The injunctive relief "shall include an order to alter facilities to make such facilities readily accessible to and useable by individuals with disabilities" to the extent required by the ADA. 42 U.S.C. § 12188(a)(2).

As set forth above, Plaintiff may seek recourse for barriers he personally encountered, as well as for those he is aware of that cause him to be reasonably

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ

deterred from visiting the public accommodation. *See* Section IV.D., *supra*. A plaintiff seeking injunctive relief must also show "a sufficient likelihood that [the plaintiff] will again be wronged in a similar way…[t]hat is,…a real and immediate threat of repeated injury." *Fortyune v. American Multi-Cinema, Inc*., 364 F.3d 1075, 1081 (9th Cir. 2004) (internal quotations omitted).

Here, there is every indication that the Property will remain in, or return to, a non-compliant state in the future if an appropriate injunctive order is not issued. During this case, Defendants have failed to remove the aforementioned/identified barriers, removal of which is readily achievable. Plaintiff will not be able to access the Property without difficulty, humiliation, and/or frustration if Defendants are not ordered to remediate the existing violations. *See* UF 11. Accordingly, an injunction is appropriate to ensure that Defendants comply with the law, and that Plaintiff can enjoy full access of the premises.

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant his motion and award judgement in the form of injunctive relief in favor of Plaintiff and against Defendants.

Dated:  May 19, 2022

THE LAW OFFICE OF HAKIMI & SHAHRIARI

By:    */s/ Anoush Hakimi*
_____
Anoush Hakimi, Esq.
Attorneys for Plaintiff, James Shayler

PLAINTIFF'S MEMORANDUM OF POINTS & AUTHORITIES ISO MSJ