Ara Sahelian, Esq., [CBN 169257]
SAHELIAN LAW OFFICES
25108 Marguerite Pkwy, Ste A
Mission Viejo, CA 92692
949. 859. 9200
e-mail: contact@sahelianlaw.com
Attorneys for MMWH Group LLC and Wasim Hamad

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT

|  |  |
|---|---|
| James Shayler,<br><br>Plaintiff,<br><br>vs.<br><br>MMWH Group LLC and Wasim Hamad,<br><br>Defendants, | **CASE NO.:**<br>2:20-cv-10051-MWF-PVC<br>The Honorable Michael W. Fitzgerald<br>**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Hearing Date: August 30, 2022<br>Hearing Time: 10:00 AM |

**TABLE OF CONTENTS**
**REPLY BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION** …………………….………..1

As of August 3, 2022, Plaintiff Shayler was unaware that the within case was being litigated. Plaintiff was of the opinion that he had no ongoing cases with the Hakimi and Shahriari Firm.

**II. ARGUMENT** …………………….………...3

**A. Plaintiff Shayler has no Standing, in that he has no plans to return to Balcom's Market**

**B. Plaintiff Shayler has offered no facts showing that the proximate cause for Plaintiff's alleged denial of access was the condition of the parking lot, on the dates of his visit.** …………………….………...6

1. The access aisle and the adjoining accessible route (SUF 4) …………………….………..6

2. The accessible route to the entrance (SUF 5) …………………….………..6

3. The striping (SUF 6) …………………….………...9

4. The cross-slopes (SUF 7, 8) ….……………….………..10

5. The ISA sign (SUF 9) …………………….………10

6. Graffiti on the 'No Parking' sign (SUF 10) ……………..…………..11

7. The walking surface (SUF 11) …………………….………12

8. The floor mat (SUF 12) ….…...……………….…..12

**III. CONCLUSION** ….…………………….......13

## TABLE OF EXHIBITS

**EXHIBIT A - Email Exchanges between this Counsel and Plaintiff's Counsel**

**EXHIBIT B -  Defendants' Notices of Deposition**

**EXHIBIT C - Plaintiff's Objection**

**EXHIBIT D - Defendant's Interrogatories & Plaintiff's Responses**

**EXHIBIT E - Defendant's Request for Production of Documents & Plaintiff's Responses**

**EXHIBIT F - Defendant's Request for Admissions & Plaintiff's Responses**

**EXHIBIT G - Affidavit of Non-Appearance and deposition transcripts from May 31, 2022**

**EXHIBIT H - Emails re. Plaintiff's 1st Notice of Deposition**

**EXHIBIT I - Emails re. Plaintiff's 2nd - 4th Notice of Deposition**

**EXHIBIT J - Emails re. Meet and Confer 3/9 Land Inspection**

**EXHIBIT K - Emails re. 3/9 Land Inspection**

**EXHIBIT L - Photographs of Paths of Travel**

**EXHIBIT M - Photographs of Surface of Path of Travel**

**EXHIBIT N - Photographs of Paint in Disabled Parking Area**

**EXHIBIT O - Photographs of Parking Space Slope**

**EXHIBIT P - Photographs of Access Aisle Slope**

**EXHIBIT Q - Photographs of International Symbol of Accessibility Sign at Business Entrance**

**EXHIBIT R - Photographs of Disabled Parking Sign**

**EXHIBIT S - Photographs of the Concrete of the Parking Space Area**

**EXHIBIT T - Photographs of the Floormat**

**EXHIBIT U - Shayler Cases List by Visit**

**EXHIBIT V - 3-D Illustrations of the Property**

**EXHIBIT W - Photographs of Plaintiff James Shayler Walking**

**EXHIBIT X - Emails and Correspondence Regarding the Meet and Confer on this Motion**

**EXHIBIT Y - 1991 ADA Standards**

**Exhibit Z is a true and correct copy of Plaintiff's deposition transcript taken in *Shayler v. Prairie* on August 3, 2022**

**Exhibit AA is a true and correct copy of communication with opposing counsel**

# REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

**As of August 3, 2022, Plaintiff Shayler was unaware that the within case was being litigated. Plaintiff was of the opinion that he had no ongoing cases with the Hakimi and Shahriari Firm.**

Plaintiff alleges he visited the Business on December 16, 2019, August 17, 2020, and September 14, 2020, respectively, (TAC 4:22-25), and that he was deterred from shopping at the Business because of the condition of the parking.

Plaintiff had no recollection that this case is still active, and has no knowledge whether it is active or has been settled. He claims the last time he had spoken to the Hakimi & Shahriari Firm was 3-4 months ago. This counsel has not been able to depose Plaintiff for the within case, but was able to depose Plaintiff on another one of his several cases he has filed. On August 3, 2022, in said deposition for the ongoing case *James Shayler v. Prairie Hospitality Group Inc. et al,* this counsel questioned Plaintiff regarding his knowledge on the status of the within case (See Exhibit Z for Plaintiff's Deposition Transcript re. *Shayler v. Prairie*):

```
20 Q.· · Have you ever employed any other attorneys
21· ·other than the Manning firm?
22· · · ·A.· ·Yes.
23· · · ·Q.· ·Name them.
24· · · ·A.· ·I'm not sure of their names.· I'm not sure of
```

> 25· ·the name on the law firm. (35; 20-25).
>
> ·Q.· · Does the name Hakimi refresh your memory?
> ·2· · · ·A.· · Yeah.· Yeah.· I believe that was -- that's
> ·3· ·them.
> ·4· · · ·Q.· · Any others?
> ·5· · · ·A.· · Not that I'm aware of, no.
> ·6· · · ·Q.· · Do you currently have a case or more than one
> ·7· ·case with the Hakimi firm?· That's Hakimi & Shahriari?
> ·8· · · ·A.· · I don't believe so.
> ·9· · · ·Q.· · When was the last time you communicated with
> 10· ·them?
> 11· · · ·A.· · Maybe three or four months ago.
> 12· · · ·Q.· · You don't have to tell me the substance of the
> 13· ·communication but was it in reference to a case?
> 14· · · ·A.· · Yes, it was.
> 15· · · ·Q.· · Is that case terminated? (36; 1-15).
>
> ·Q.· · BY MR. SAHELIAN:· Mr. Shayler, insofar as you
> 14· ·know, are all the cases that you might have had with any
> 15· ·attorney other than the Manning firm closed, terminated,
> 16· ·done with, call it what you want?
> 17· · · ·MR. HASHEMI:· Objection, compound, vague, and calls
> 18· ·for speculation.
> 19· · · · · · · Go ahead, Mr. Shayler.
> 20· · · ·THE WITNESS:· I believe so, yes.
> 21· · · ·Q.· · BY MR. SAHELIAN:· And what makes you think
> 22· ·that?
> 23· · · ·MR. HASHEMI:· Same objections.
> 24· · · ·THE WITNESS:· Because they -- because they told me. (37;
> 13-24).

In spite of Plaintiff's apparent belief that this matter is resolved and his testimony that he has not communicated with his counsel on this matter in months, the Hakimi and Shahriari Firm offered Plaintiff's availability to be deposed in less

than 48 hours. Plaintiff's counsel had consistently obstructed Defendants from deposing Plaintiff for several months.

On July 27, 2022 at 3:23PM, Plaintiff's counsel seemingly had a change in cooperation and offered Plaintiff's availability for deposition on July 29, 2022 at 9AM. (See Exhibit AA for a true and correct copy of an email chain depicting said offer of Plaintiff's availability for deposition). Given the less than 48 hour notice, this counsel was not available at the time proposed by Plaintiff's counsel and politely declined that offer. Defendants had already scheduled to take Plaintiff's deposition in a different case, *Shayler v. Prairie*, a few days later on August 3, 2022.

It is indeed suspicious that Plaintiff's counsel intended to schedule a deposition on such short notice despite Plaintiff's testimony that he had not spoken with the Hakimi & Shahriari Firm in months.

**II. ARGUMENT**

**A. Plaintiff Shayler has no Standing, in that he has no plans to return to Balcom's Market**

Plaintiff's Declaration to the Opposition in the MSJ states he plans to return. Plaintiff's deposition testimony states otherwise. Plaintiff states in his declaration to the within motion, "I intend and plan to visit the Property again once the

existing barriers to access are removed (i.e., once the existing ADA violations are remediated). The Property is conveniently located near a hospital where I receive medical treatment and I like to stop there to purchase snacks/drinks before driving home." Shayler Dec., Dkt 95-4, ¶9.

This counsel asked Plaintiff during his deposition whether he recalls having sued a market near Beverly Hospital in Montebello. The inquiry concerned the within lawsuit:

```
" · Q.· · Can you tell me what the status is on that
 ·2· ·case?
 ·3· · · · A.· · I couldn't tell you.· I -- I couldn't tell you
 ·4· ·the status.· I believe they settled, I'm not sure.· I --
 ·5· ·I'm not sure.
 ·6· · · · Q.· · Can you describe the parking area of that
 ·7· ·market for me?
     A.· · I could not.· I could not.
 ·9· · · · Q.· · When was the last time you were there?
 10· · · · A.· · I'm just not sure what last time I was there.
 11· ·Been recent.· Couple years.
 12· · · · Q.· · Do you have any reason to go back there?
 13· · · · A.· · Not unless I go to the wound care center, no.
 14· · · · Q.· · Is there any reason for you to go back to the
 15· ·wound center?
 16· · · · A.· · Yes.
 17· · · · Q.· · Do you have an appointment?
 18· · · · A.· · No.
 19· · · · Q.· · When do you plan to go back there?
 20· · · · A.· · I'm not.
 21· · · · Q.· · As we sit here, you have no plans to go back
 22· ·to the wound center; is that correct?
 23· · · · A.· · That's correct.
 24· · · · Q.· · And as we sit here, you have no reason to go
```

25· ·back to the Beverly Hospital; is that correct? (52; 1-25)

A.· · That -- I'm not sure.· If I -- if there's any
·2· ·reason for me to go back to the Beverly Hospital, I'm not
·3· ·sure.
·4· · · · Q.· · Do you know of any reason at this point for
·5· ·you to have to go back to the Beverly Hospital in
·6· ·Montebello?
·7· · · · A.· · No. (53; 1-7)

Defendants would be remiss if they did not bring to the Court's attention the discrepancy in Plaintiff's testimony at his deposition and 2 days later in his declaration. On August 3, 2022, Plaintiff testified that he had no reason to return to the Beverly Hospital (that the last time he had visited the hospital was about 2 years ago). Yet in a declaration, which appears to have been prepared by his attorneys, states the opposite, suggesting that he continues to be treated at the Beverly Hospital:

"I intend and plan to visit the Property again …. The Property is conveniently located near a hospital where *I receive* medical treatment…." Shayler Dec., Dkt 95-4, ¶9. (emphasis added)

Both statements made under oath cannot be true at the same time. Clearly, Plaintiff is not currently receiving treatment at the Beverly Hospital and has no future plans to visit the hospital. He cannot be asking for an injunction when he lacks plans to return to Beverly Hospital and therefore Balcom's Market. As a

result, Plaintiff lacks standing to maintain this suit.

As an aside, Plaintiff's signature on his declaration appears to be a facsimile of possibly another signature from a past declaration. The signature page submitted bears no resemblance to the blank signature page that precedes it in his declaration. Counsel for Plaintiff could perhaps explain the discrepancy, and more importantly explain Plaintiff's conflicting testimony made under oath.

**B. Plaintiff Shayler has offered no facts showing that the proximate cause for Plaintiff's alleged denial of access was the condition of the parking lot, on the dates of his visit.**

**1. The access aisle and the adjoining accessible route (SUF 4)**

Plaintiff alleges he has suffered difficulty and discomfort because the access aisle allegedly did not adjoin an accessible route on the dates of his visits. But, Plaintiff has offered no evidence showing that the parking lot, in the condition that it was in on the dates of his visit, violated the 1991 ADA Accessibility Guidelines. Moreover, Plaintiff offers no evidence that the proximate cause of his difficulty or discomfort was that the access aisle did not allegedly adjoin the accessible route. Plaintiff simply makes a conclusory remark and then claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

**2. The accessible route to the entrance (SUF 5)**

Plaintiff alleges he has suffered difficulty and discomfort because of the alleged uneven surfaces along the accessible route to the entrance on the dates of his visits. Even if there were irregularities present anywhere on the path of travel, Plaintiff has not offered evidence as to the proximate cause of his difficulty and discomfort. Plaintiff provides vague language that he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

None of Plaintiff's physicians seem to have recommended that Plaintiff avoid walking where the ground has ½ inch variations in height.  None of Plaintiff's physicians has recommended that he avoid any surface that has a ½ inch variation in height. Plaintiff was queried at his deposition relative to the large number of medical reports he had offered previously. For instance, he was questioned with respect to Exhibits Z1 and Z2 cited in the *Shayler v. Prairie* deposition, medical reports drafted by physician, Dr. Charles Ananian,

> "Q.· · Did he tell you to avoid walking without a
> 16· ·walker?
> 17· · · · A.· · No, he did not say to avoid walking without a
> 18· ·walker.· I just -- he gave me some limitations and said
> 19· ·that I was going to have to be careful not to lift
> 20· ·anything too heavy I believe he said and stuff like that." (40; 15-20)

> "15· · · · Q.· · BY MR. SAHELIAN:· All right.· Do you remember
> 16· ·Dr. Ananian telling you to limit your walking without
> 17· ·cane or a walker?
> 18· · · · A.· · No." (Exhibit Z, 41; 15-18)

Moreover, during the deposition, this counsel questioned Plaintiff with respect to Exhibit Z5 cited in the *Shayler v. Prairie* deposition, a medical report of Plaintiff's physical conditions drafted by a Dr. McCloy.

"Q.· · All right.· And did he tell you what to do or
25· ·not to do as a result of this visit? (Exhibit Z, 44; 23-25).

·  · · · A.· · To always wear slippers and don't walk around
·2· ·barefooted.
·3· · · · Q.· · Did you tell him you were using a walker or a
·4· ·cane?
·5· · · · A.· · I believe so.
·6· · · · Q.· · Did you walk into his office with a walker or
·7· ·a cane?
·8· · · · A.· · I believe so.
·9· · · · Q.· · Which?
10· · · · A.· · One of the two.· I don't remember on this
11· ·visit which I used.· I think I used a walker.
12· · · · Q.· · Did you tell him that you're unable to walk on
13· ·rough terrain?
14· · · · A.· · Yes.
15· · · · Q.· · Did you tell him you were unable to walk on
16· ·slopes?
17· · · · A.· · He told me to try to avoid slopes.
18· · · · Q.· · Did he tell you to try and avoid rough
19· ·terrain?
20· · · · A.· · Yes." (Exhibit Z, 45; 1-20).

Dr. Thomas McCloy's medical report, marked Exhibit Z5 in the deposition report, makes no such recommendations.

Plaintiff verified that he had been spotted in public walking without the use of a cane or walker and taking photographs and slope measurements:

- 8 -

```
"2       (Exhibit 18 was referenced.)
 3     Q.  BY MR. SAHELIAN:  Mr. Shayler, this is also a
 4  photograph of you next to your Volkswagen; correct?
 5     A.  Uh-huh.
 6     Q.  Is that a yes?
 7     A.  Yes.
 8     Q.  All right.  And you're leaning over with the
 9  level gauge in your left hand, I'm guessing to take a
10  slope measurement; correct?
11     A.  Yes.
12     Q.  Okay.  And can you tell -- perhaps Audrey can
13  magnify the photograph -- next to your feet, can you tell
14  there's cracking on the asphalt?
15     A.  Yes, there is.
16     MR. SAHELIAN:  All right.  Okay.  We're going to
17  mark this as Exhibit 18.
18     Q.  And that's you again bent all the way and
19  taking a slope measurement; correct?
20     A.  Uh-huh.
21     Q.  Is that a yes?
22     A.  Yes." (Exhibit Z, 73; 1-22)
```

Plaintiff has not offered any evidence showing that the parking lot, in the condition that it was in on the dates of his visits, violated the 1991 ADA Accessibility Guidelines. Moreover, Plaintiff offers no evidence that the proximate cause of his difficulty and discomfort was the alleged uneven surfaces along the path of travel. Plaintiff simply makes a conclusory remark and claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

**3. The striping (SUF 6)**

Plaintiff alleges he has suffered difficulty and discomfort because of the

faded paint on the accessible parking area on the dates of his visits.

It is noteworthy that Plaintiff is completely silent in his most recent declaration as to how he was affected by the alleged faded lines, and how that caused him difficulty and discomfort. Moreover, Plaintiff offers no evidence that the proximate cause of his difficulty and discomfort was the faded paint at the accessible parking area. Plaintiff simply makes a conclusory remark and claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

**4. The cross-slopes (SUF 7, 8)**

Plaintiff alleges he has suffered difficulty and discomfort because of the cross-slopes of the accessible parking area on the dates of his visits.

Plaintiff is completely silent as to how he was affected by the cross-slopes of the accessible parking area, and how that caused him difficulty and discomfort. Moreover, Plaintiff offers no evidence that the proximate cause of his difficulty and discomfort was the cross-slopes at the accessible parking area. Plaintiff simply makes a conclusory remark and claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

**5. The ISA sign (SUF 9)**

Plaintiff alleges he has suffered difficulty and discomfort because of the lack of International Symbol of Accessibility sign at the entrance. The lack of a

designated ISA sign does not appear to have harmed Plaintiff as he openly admitted to being aware that there was just one entrance into Balcom's Market:

> "18· · · · Q.· · Can you tell me how many entrances the market
> 19· ·had?
> 20· · · · A.· · Yes.
> 21· · · · Q.· · How many?
> 22· · · · A.· · One en -- one entrance. (Exhibit Z; 54; 18-22).

Plaintiff is silent as to how he was affected by the lack of an ISA sign, and how that caused him difficulty and discomfort. Moreover, Plaintiff offers no evidence that the proximate cause of his difficulty and discomfort was the ISA sign. Plaintiff simply makes a conclusory remark and claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

**6. Graffiti on the 'No Parking' sign (SUF 10)**

Plaintiff alleges he has suffered difficulty and discomfort because of the graffiti on the designated disabled parking space sign on the dates of his visits.

Plaintiff is silent as to how he was affected by the graffiti on the designated disabled parking sign, and how that caused him difficulty and discomfort. Moreover, Plaintiff offers no evidence that the proximate cause of his difficulty and discomfort was the graffiti on the designated disabled parking sign at the accessible parking area. Plaintiff simply makes a conclusory remark and claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

### 7. The walking surface (SUF 11)

Plaintiff alleges he has suffered difficulty and discomfort because of the walking surface on the accessible parking area and accessible route. Plaintiff is silent as to how he was affected by the walking surface at the parking lot, and how that caused him difficulty and discomfort. Moreover, Plaintiff offers no evidence that the proximate cause of his difficulty and discomfort was the walking surface at the parking lot. Plaintiff simply makes a conclusory remark and claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

### 8. The floor mat (SUF 12)

Plaintiff alleges he has suffered difficulty and discomfort because of the floor mat at the entrance of Balcom's Market. Plaintiff is silent as to how he was affected by the floor mats at the entrance of the business, and how that caused him difficulty and discomfort. Moreover, he offers no evidence that the proximate cause of his difficulty and discomfort was the floor mats at the entrance of the business. Plaintiff simply makes a conclusory remark and claims he "experienced difficulty, humiliation, and frustration." Shayler Dec ¶12.

The presence of a floor mat at the entrance of Balcom's Market also presents no issue to Plaintiff, given his testimony of having several floor mats, carpets, and rugs inside his place of residence:

"Q.·· Describe for me if you would what sort of
15·· floor covering you have throughout the house, starting
16·· with the bedrooms to the bathrooms and kitchen.
17· · · A.· · My whole floor's a wooden floor or vinyl
18·· floor.· There is a couple places where there's carpet,
19·· rugs.· But it's all wooden floor.
20· · · Q.· · And when you say there's carpet rugs, where
21·· are these carpet rugs located?
22· · · A.· · In the living room and in the bedroom.
23· · · Q.· · Describe the rugs in the bedroom.
24· · · A.· · Just a -- an Oriental rug, probably six-by-
25·· nine, and it's on the end of my bed." (Exhibit Z, 19:14-25).

Here, Plaintiff provides no evidence that said floor mats are unstable or loose or that they provide a tripping hazard. Plaintiff has also failed to provide facts showing he was denied access. (See SUF 12) The Court must therefore grant Defendants' motion for summary judgment on this issue.

## V. CONCLUSION

For all the foregoing reasons Defendants respectfully request that the Court grant the within Motion for Summary Judgment on the ADA cause of action.

\\

Date: August 15, 2022

SAHELIAN LAW OFFICES

_____
Ara Sahelian, Esq.

- 13 -